UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN VELEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>LASKO PRODUCTS, LLC,<br><br>Defendant. | Case No. 1:22-cv-08581 (JLR)<br><br>**<u>OPINION AND ORDER</u>** |

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Juan Velez ("Plaintiff") brings this putative class action against Lasko Products, LLC ("Defendant"), based on alleged defects with space heaters manufactured by Defendant. ECF No. 14 (the "Amended Complaint" or "Am. Compl."). Plaintiff asserts that Defendant (1) violated the New York General Business Law (the "GBL"), N.Y. Gen. Bus. Law §§ 349-350, (2) violated nine other states' consumer-fraud statutes, (3) breached an express warranty, (4) breached the implied warranties of merchantability and fitness for a particular purpose, (5) breached the Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301 *et seq.*, (6) committed common-law fraud, and (7) was unjustly enriched. *See* Am. Compl. ¶¶ 68-92. Defendant has filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF Nos. 17 ("Br."), 21 ("Reply"). Plaintiff opposes this motion. ECF No. 20 ("Opp."). As explained below, Defendant's motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The following facts, taken from the Amended Complaint, are accepted as true for the purpose of deciding the motion to dismiss, and the Court draws all reasonable inferences in

Plaintiff's favor.  *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023).

Defendant "manufactures, markets, and sells low profile portable space heaters."  Am. Compl. ¶ 1.  On the space heaters' packaging and in advertising copy provided to third-party sellers such as Amazon and Home Depot, Defendant describes the space heaters "as having an 'Automatic Temperature [feature which] controls room temperature' and an 'Easy-to-read digital display [that] allows you to control the warm air to your comfort level.'"  *Id.* (alterations in original).  The automatic-temperature feature "relies on a temperature control panel and thermostat inside of the device to ensure the temperature matches what the user sets."  *Id.* ¶ 2.  But "due to defective design and manufacture of the temperature control board, including the internal thermostat, the device is capable [of overheating] and does consistently overheat the area."  *Id.* ¶ 3.  Defendant's space heaters also suffer from a "high failure rate where the unit will shut off prematurely after several minutes plugged in."  *Id.* ¶ 21. "Numerous users have documented their experiences with the flawed temperature controls through online forums and customer reviews during the past several years."  *Id.* ¶ 7; *see id.* ¶¶ 8-12, 23-24 (quoting various customer reviews).

In the spring of 2022, Plaintiff bought one of Defendant's space heaters from a Home Depot store in the Bronx.  *Id.* ¶ 48.  The device "functioned adequately for a short period of time following Plaintiff's purchase."  *Id.* ¶ 50.  But "[w]ithin several months, when Plaintiff turned his unit on and attempted to use its automatic temperature control, the device would keep generating heat far above the programmed temperature."  *Id.* ¶ 51.  At some later point in time, the space heater began to "repeatedly and prematurely shut off after being plugged in for only several minutes."  *Id.* ¶ 53.  "Plaintiff initially sought Defendant's assistance in repairing and/or replacing" the space heater, but Plaintiff was "stymied" by Defendant's "warranty

process and failure to attend to the needs of customers." *Id.* ¶¶ 56-57. "This included being placed on hold for upwards of half an hour, being disconnected from phone calls, and being asked for proof of purchase even though most people, including Plaintiff, do not retain the large, long box [that the space heater] was sold in for several months, which is when the above-described issues typically begin to manifest." *Id.* ¶ 58.

Plaintiff filed suit on October 7, 2022. ECF No. 1. Defendant moved to dismiss the complaint on February 13, 2023. ECF No. 12. On February 27, 2023, Plaintiff filed an amended complaint. Am. Compl. Defendant moved to dismiss the Amended Complaint on March 13, 2023. Br. Plaintiff filed his opposition on March 27, 2023. Opp. Defendant filed its reply on April 3, 2023. Reply.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I.     The GBL

The Court begins with Plaintiff's claims under GBL Sections 349 (prohibiting deceptive acts or practices) and 350 (prohibiting false advertising). "The standard for

recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239 (S.D.N.Y. 2020) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002)).  Hence, the Court will analyze Plaintiff's claims under Sections 349 and 350 together.  *See, e.g., id.* at 239-42 (doing so); *MacNaughton*, 67 F.4th at 95-99 (same).

To state a claim under either Section 349 or 350 of the GBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).  These claims are "not subject to the pleading-with-particularity requirements of Rule 9(b)" and "need only meet the [ordinary pleading] requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *accord Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) ("A deceptive practice . . . need not reach the level of common-law fraud to be actionable under section 349.").

Plaintiff has adequately alleged all three elements of a claim under Sections 349 and 350.  First, Defendant's alleged misrepresentations about its space heaters qualify as "consumer-oriented conduct." *Koch*, 967 N.E.2d at 675 (citation omitted).  "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affects similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (brackets omitted) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  "This requirement is liberally construed." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 94 (S.D.N.Y. 2021).  The

potential to affect similarly situated consumers clearly exists here, and, indeed, Defendant does not argue otherwise.  *See generally* Br.; Reply.

Second, Plaintiff sufficiently alleges that Defendant's representations are "materially misleading."  *Koch*, 967 N.E.2d at 675 (citation omitted).  "New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022) (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1198 (N.Y. 2021)).  "Although 'it is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer,' whether an advertisement would mislead a reasonable customer 'is generally a question of fact not suited for resolution at the motion to dismiss stage.'"  *Brockington v. Dollar Gen. Corp.*, --- F. Supp. 3d ----, 2023 WL 6317992, at *8 (S.D.N.Y. Sept. 28, 2023) (first quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam); and then quoting *Duran*, 450 F. Supp. 3d at 346).

Defendant claims that "Plaintiff describes no deceptive conduct.  At most, Plaintiff asserts that the Product he purchased malfunctioned after several months of use, but that does not make [Defendant's] earlier conduct 'misleading.'"  Br. at 9.  The Court does not agree and finds that Plaintiff's Amended Complaint identifies potentially deceptive conduct: namely, Defendant's representations that its automatic-temperature feature "controls room temperature" and "control[s] the warm air to [the user's] comfort level."  Am. Compl. ¶ 1.  Plaintiff alleges that, contrary to these representations and advertisements, the space heater overheats and exceeds the temperature set by the user, and/or shuts off without warning after a few minutes of use.  *See id.* ¶¶ 3, 5, 19-22, 51-53.  Whether a reasonable consumer would

regard a statement that a space heater "controls room temperature" as misleading when the space heater overheats the room temperature and/or shuts off entirely is at least an issue of fact.

Defendant also asserts that "[i]n order to allege that a defendant has engaged in 'materially misleading' conduct, a plaintiff must allege more than that the defendant furnished a product that ended up not working as promised.  Rather, he must plausibly allege that the defendant had knowledge of the alleged defects at the time of sale."  Br. at 10.  Again, the Court does not agree.

"[I]t is not necessary under the [GBL] that a plaintiff establish the defendant's intent to defraud or mislead."  *Oswego Laborers' Loc. 214 Pension Fund*, 647 N.E.2d at 745; *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999) ("Although a person's actions may at once implicate both, General Business Law § 349 contemplates actionable conduct that does not necessarily rise to the level of fraud.").  Thus, Plaintiff's allegations that Defendant engaged in material misstatements regarding the functioning of their products and did not disclose their defects is sufficient to state a claim under the GBL. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 431 (S.D.N.Y.) (concluding that plaintiff stated GBL claim where they were harmed by the drop in their vehicles' value due to ignition-switch defect and other defects), *modified on other grounds*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 958, 978 (D. Minn. 2020) (applying New York law and denying summary judgment in favor of defendant on GBL claim where plaintiff established that defendant ATV producer "fail[ed] to disclose the Sportsman ATVs' exhaust heat defect"), *aff'd*, 9 F.4th 981 (8th Cir. 2021); *Wedra v. Cree, Inc.*, No. 19-cv-03162 (VB), 2020 WL 1322887, at *7-8 (S.D.N.Y. Mar. 20, 2020) (declining to dismiss plaintiff's GBL claim based on factual

representations that the defendant's light bulbs would yield efficiency savings and that they instead went dark within six months and thus did not result in energy savings); *Bishop v. DeLaval Inc.*, 466 F. Supp. 3d 1016, 1021, 1028-29 (W.D. Mo. 2020) (applying New York law and holding that plaintiff stated claims under Sections 349 and 350 of the GBL where plaintiff dairy farmers purchased milking systems from defendants who "employed a uniform marketing scheme to conceal defects of the [milking] robots and misrepresented the historical performance and features" of the milking systems).

Third, Plaintiff adequately pleads that he "suffered injury as a result of [Defendant's] allegedly deceptive act or practice." *Koch*, 967 N.E.2d at 675 (citation omitted). Plaintiff relies on a price-premium theory of injury. *See* Opp. at 6-7. Under a price-premium theory, "a plaintiff claims to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021). A plaintiff pursuing a GBL claim under a price-premium theory "must allege not only that [the] defendant[] charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Duran*, 450 F. Supp. 3d at 346 (quotation marks and citation omitted). "This connection often takes the following form: A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Id.*

Plaintiff has sufficiently pleaded injury under a price-premium theory. To begin with, Plaintiff alleges that Defendant marketed its space heaters as having a unique quality, namely, an automatic temperature-control system "to ensure [that] the temperature matches what the user sets." Am. Compl. ¶ 2; *see id.* ¶ 76 (describing the methods by which "Defendant

directly marketed the Product to Plaintiff and consumers").  Plaintiff also alleges that this marketing allowed Defendant to charge a price premium for its space heaters.  *See id.* ¶ 36 ("The Product is sold for a price premium compared to other similar products, no less than $79.99, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.").  Further, Plaintiff alleges that he paid the price premium. *See id.* ¶ 59 ("Plaintiff bought the Product at or exceeding the above-referenced price."); *id.* ¶ 60 ("Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.").  Finally, Plaintiff alleges that he later learned that his space heater's automatic temperature-control system was defective. *See id.* ¶ 51 ("Within several months, when Plaintiff turned his unit on and attempted to use its automatic temperature control, the device would keep generating heat far above the programmed temperature."); *id.* ¶ 53 ("Following the period where the Product's automatic temperature control failed to function, Plaintiff's unit would repeatedly and prematurely shut off after being plugged in for only several minutes.").  Thus, Plaintiff has pleaded the elements of an injury under a price-premium theory.  *See Duran*, 450 F. Supp. 3d at 346.

Defendant contends that "all of Plaintiff's claims fail because he acknowledges that his purchase was subject to an express warranty that spelled out procedures for making a claim and that he failed to follow those procedures."  Br. at 5.  Specifically with respect to Plaintiff's GBL claims, Defendant asserts that "[w]here the product in question is covered by a warranty and that warranty is honored, the defendant has provided an adequate remedy for purposes of the GBL."  *Id.*  The Court is not persuaded by this argument at this juncture.

The sole authority that Defendant cites on this point, *Kommer v. Ford Motor Co.*, No. 17-cv-00296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017), is distinguishable.  The

plaintiff in *Kommer* purchased a truck with defective door handles, but he "d[id] not allege that he took his truck to get repaired or that it was not under warranty." *Id.* at *1. The court held that, by virtue of the warranty process, the plaintiff "ha[d] a perfectly adequate remedy available to him, and that defeat[ed] his price-premium theory of injury." *Id.* at *5; *see id.* ("if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury" sufficient to support a price-premium claim). Notably, the plaintiff in *Kommer* did not allege that the remedy offered by the defendant was inadequate. *See id.* ("If Ford was unable to fix the defect, then Kommer may have suffered a cognizable injury under N.Y. G.B.L sections 349 and 350. . . . But the Court does not need to decide this issue because Kommer does not allege that he actually experienced these problems.").

In contrast, Plaintiff in the present case alleges that he "initially sought Defendant's assistance in repairing and/or replacing" the space heater, Am. Compl. ¶ 56, but that he was prevented from doing so by, among other things, "being disconnected from phone calls" with customer service, *id.* ¶ 58. While further factual development may show that Plaintiff was not in fact foreclosed from using the warranty process, accepting as true (as the Court must at this stage) Plaintiff's allegations that Defendant prevented Plaintiff from partaking in the warranty process, Defendant's warranty process was not "a perfectly adequate remedy" sufficient to defeat Plaintiff's GBL claims. *Kommer*, 2017 WL 3251598, at *5; *see, e.g.*, *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019) (plaintiff stated price-premium-theory claim by alleging that "she had attempted to get the defect repaired but that the fixes made by the third-party dealership did not remedy the issue"); *Milisits v. FCA US LLC*, No. 20-cv-11578, 2021 WL 3145704, at *13 (E.D. Mich. July 26, 2021) ("FCA has not repaired Plaintiffs' vehicles, and that too weighs in favor of finding the existence of a 'cognizable injury' under Sections 349 and 350 [of the GBL]." (citation omitted)); *Busler v. Nissan N.*

*Am., Inc.*, --- F. Supp. 3d ----, 2023 WL 5424284, at *4 (M.D. Tenn. Aug. 22, 2023) ("[T]he ordinary meaning of 'fail to repair' would include both (1) outright refusals to repair and (2) the performance of ostensible repairs that did not resolve the complained-of problem.  Courts that have considered such questions, moreover, appear to have largely concluded that whether a warrantor's ineffective repairs amounted to a failure to repair for warranty purposes presents a factual question.").

Defendant may be correct that minor "inconveniences" do not "relieve a purchaser of making a warranty claim in order to assert injury" under a price-premium theory.  Br. at 6. But Plaintiff does not allege mere inconvenience; he alleges that he was "disconnected from phone calls," thereby thwarting his ability to participate in Defendant's warranty process. Am. Compl. ¶ 58.  The Court sees little practical difference between a repair that "d[oes] not remedy the issue," *Cummings*, 401 F. Supp. 3d at 307, and a customer-service process that prevents a customer from obtaining a repair at all.

In sum, Plaintiff has stated claims under Sections 349 and 350 of the GBL.

## II.     Other States' Consumer-Fraud Acts

In addition to seeking certification of a class of New York consumers, Plaintiff also seeks certification of a multistate class consisting of "[a]ll persons in the States of Alabama, Idaho, Montana, Alaska, West Virginia, Georgia, South Carolina, Tennessee, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged." Am. Compl. ¶ 61.  Plaintiff alleges that Defendant violated "[t]he Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class" and that those statutes "are similar to the consumer protection statute invoked by Plaintiff."  *Id.* ¶ 71.  Defendant seeks to dismiss Plaintiff's claims under those states' consumer-fraud statutes because Plaintiff "fails to adequately identify the statutes under which he purports to bring claims on behalf of a class,

and as such, the Complaint is insufficiently pleaded."  Br. at 10; *see id.* at 11 ("[N]owhere

does Plaintiff identify the particular statutes – not by name or citation – that he seeks to

invoke.  [Defendant] and the Court are not required to guess what claims Plaintiff is

attempting to plead.").  The Court will not dismiss these claims at this time.

       "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects

the merits of a claim.  Factual allegations alone are what matters."  *Townsend v. Benjamin*

*Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting *Albert v. Carovano*, 851 F.2d 561, 571

n.3 (2d Cir. 1988) (en banc)); *see Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014) (per

curiam) (*Twombly* and *Iqbal* "concern the *factual* allegations a complaint must contain to

survive a motion to dismiss"; plaintiffs' failure to "expressly invoke § 1983" was improper

basis for dismissing complaint); *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp.

3d 456, 472 (S.D.N.Y. 2019) (denying motion to dismiss claim under the Uniform

Commercial Code (the "UCC") even though the complaint "fail[ed] to specify which state's

commercial code (Indiana or New York) [Defendant] allegedly violated and fail[ed] to specify

a section of the UCC").  While it would behoove a counseled party such as Plaintiff to

expressly identify the provisions allegedly violated, the failure to cite the precise statutory

provision does not warrant dismissal of the claim.  As presently pleaded, the Amended

Complaint provides Defendant with "fair notice of what the claim is and the grounds upon

which it rests."  *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (ellipsis

omitted) (quoting *Twombly*, 550 U.S. at 555).

       The case relied upon by Defendant (Br. at 11), *Sipfle v. Cortland Country Club, Inc*.,

No. 04-cv-00565, 2005 WL 2922155 (N.D.N.Y. Nov. 4, 2005), does not counsel otherwise.

*Sipfle* held that the plaintiffs, "hav[ing] not identified the federal statute or a provision of the

Constitution that they believe defendants violated," had "fail[ed] to allege federal question

jurisdiction." *Id.* at *2.  Identification of a federal cause of action to establish subject-matter jurisdiction is not at issue here.  *See* Am. Compl. ¶¶ 37-43 (plausibly pleading the prerequisites for jurisdiction under the Class Action Fairness Act of 2005); *cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required.  The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." (footnote omitted)).

Defendant offers no other reason for the Court to dismiss Plaintiff's claims under the other states' consumer-fraud statutes.[1]  Hence, the Court denies Defendant's motion to dismiss those claims.

## III.   Express Warranty[2]

Plaintiff claims next that Defendant breached an express warranty.  An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. § 2-313(1)(a).  "To

---

[1] In a footnote, Defendant asserts that the Court "lacks [personal] jurisdiction to adjudicate claims of absent class members for transactions that took place outside of New York and that have no connection to this state."  Br. at 11 n.4 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017)).  At the same time, Defendant stresses that it is "not bringing an alternative motion to dismiss for lack of jurisdiction at this time."  *Id.*  In light of this, and because a court need not entertain a personal-jurisdiction argument if a defendant declines to press it, the Court declines to dismiss Plaintiff's multistate claims on personal-jurisdiction grounds at this stage.  *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023) ("[P]ersonal jurisdiction is an individual right that may be purposely waived or inadvertently forfeited." (quotation marks and citation omitted)).

[2] With respect to Plaintiff's express-warranty, implied-warranty, fraud, and unjust-enrichment claims, "[t]he parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law."  *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (ellipsis, quotation marks, and citation omitted).

state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).  "A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty 'may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies.'"  *Id.* (quoting *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (3d Dep't 2008)).  But "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  N.Y. U.C.C. § 2-607(3)(a). Although Section 2-607(3)(a) expressly requires "notify[ing] the seller," *id.*, courts have applied Section 2-607(3)(a)'s notice requirement in cases brought against manufacturers that did not sell the product directly to the plaintiff, *see, e.g.*, *Maroney v. Woodstream Corp.*, --- F. Supp. 3d ----, 2023 WL 6318226, at *2, *8-10 (S.D.N.Y. Sept. 28, 2023); *Wiggins v. Unilever U.S., Inc.*, --- F. Supp. 3d ----, 2023 WL 7005147, at *1, *16-18 (S.D.N.Y. July 26, 2023); *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 171, 177 (S.D.N.Y. 2022).

Assuming without deciding that Plaintiff has plausibly alleged all of the elements of an express-warranty claim, *see Goldemberg*, 8 F. Supp. 3d at 482, the Court dismisses Plaintiff's claim because Plaintiff has failed to plead that he provided Defendant with notice.  Plaintiff merely alleges that he "provides, provided, or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express . . . warrant[y]," Am. Compl. ¶ 84, and that "Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and

consumers, to its main offices, and by consumers through online forums," *id.* ¶ 85. These allegations are inadequate. Merely alleging that a plaintiff "provided or will provide notice," and/or that a defendant "received notice and should have been aware of these issues due to complaints" from people other than the plaintiff, is "insufficient" because it "do[es] not allege that [the] [p]laintiff actually provided notice as required under New York law." *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 432 (S.D.N.Y. 2023); *accord Clemmons v. Upfield US Inc.*, --- F. Supp. 3d ----, 2023 WL 2752454, at *8 (S.D.N.Y. Mar. 31, 2023); *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 285-86 (S.D.N.Y. 2022); *Colpitts*, 527 F. Supp. 3d at 589-90. "If Plaintiff had provided notice, he could have written that, rather than pleading, in essence, both that he did provide notice, and that he did not do so but will do so in the future. Plaintiff has not adequately pleaded that he in fact provided notice." *Wargo*, 599 F. Supp. 3d at 177 (brackets omitted) (quoting *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021)).

Plaintiff alternatively argues that he complied with Section 2-607(3)(a)'s notice requirement "by filing this action." Opp. at 8. "Whether the required notice for a breach of warranty claim must be made pre-lawsuit or can be accomplished by commencing litigation is an open question, and courts in this District have split in answering it." *Wheeler*, 652 F. Supp. 3d at 432. "Most courts in this District have concluded that the filing of a complaint does not constitute adequate notice of a breach of warranty claim." *Wiggins*, 2023 WL 7005147, at *17. "A distinct minority of courts have ruled that the issue of whether the filing of a complaint provides adequate notice presents a fact question for the jury." *Id.* The Court agrees with the majority view.

In support of his argument that this lawsuit provided sufficient notice to Defendant, Plaintiff cites a single case. *See* Opp. at 8 (citing *Tomasino v. Estee Lauder Cos.*, 44 F. Supp.

3d 251, 261 n.6 (E.D.N.Y. 2014)).  Itself citing a single case in support, *Tomasino* opined in

dictum that "New York cases applying N.Y. U.C.C. § 2-607(3) suggest that a plaintiff's

pleadings may constitute reasonable notice in certain cases."  44 F. Supp. 3d at 261 n.6 (citing

*Panda Cap. Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584, 586 (2d Dep't 1997)).  For its part,

the *Panda Capital* court rejected the defendant's argument that the plaintiff had failed to

provide the notice required by Section 2-607(3), asserting "that the complaint and subsequent

amended complaint in this action themselves constituted such notice, and that the plaintiff had

repeatedly made its objections to [the defendant's] pattern of deficient performance known

prior to the shipments" at issue in the case.  662 N.Y.S.2d at 586-87.

　　　The Court finds *Tomasino*'s reading of *Panda Capital* to be unpersuasive.[3]

*Tomasino*'s suggestion that "a plaintiff's pleadings may constitute reasonable notice in certain

cases," 44 F. Supp. 3d at 261 n.6, is only partly supported by *Panda Capital* itself, given that

*Panda Capital* also relied on the fact that "the plaintiff had repeatedly made its objections to

[the defendant's] pattern of deficient performance known prior to the shipments" at issue, 662

N.Y.S.2d at 586-87; *see also Hoffmann v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 562

(S.D.N.Y. 2022) (dismissing express-warranty claim for lack of pre-suit notice because,

unlike in *Panda Capital*, the "plaintiff d[id] not allege a similar history of prior complaints

that would have put [the] defendant on timely notice of the alleged breach in addition to [the]

---

[3] Of course, neither *Tomasino* nor *Panda Capital* binds the Court.  *See Camreta v. Greene*,
563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding
precedent in either a different judicial district, the same judicial district, or even upon the
same judge in a different case." (citation omitted)); *Licci ex rel. Licci v. Lebanese Canadian
Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (per curiam) ("[W]hile the decrees of lower state
courts should be attributed some weight[,] the decision is not controlling where the highest
court of the State has not spoken on the point." (ellipses omitted) (quoting *Comm'r v. Est. of
Bosch*, 387 U.S. 456, 465 (1967))).

plaintiff's complaint").  Nor has any New York state appellate court (let alone the New York

Court of Appeals) subsequently read *Panda Capital* so expansively.[4]  This paucity of

supportive authority is understandable in light of "the statutory text, which requires a buyer to

provide notice of the breach of warranty 'or be barred from any remedy.'"  *Wheeler*, 652 F.

Supp. 3d at 433 (quoting N.Y. U.C.C. § 2-607(3)(a)).  "This language does not make sense if

the act of pursuing a remedy would inherently provide notice to a merchant."  *Id.*

Further, *Tomasino*'s construal of *Panda Capital* is inconsistent with the policy reasons

underlying Section 2-607(3)'s notice requirement: (1) "open[ing] the way for settlement

through negotiation between the parties"; and (2) "minimiz[ing] the possibility of prejudice to

the seller by giving him ample opportunity to cure the defect, inspect the goods, investigate

the claim[,] or do whatever may be necessary to properly defend himself or minimize his

damages while the facts are fresh in the minds of the parties."  *Standard All. Indus., Inc. v.*

*Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978) (quotation marks and citation omitted);

*accord Great Am. Ins. Co. v. M/V Handy Laker*, Nos. 96-cv-08737 (BSJ), 97-cv-07400 (BSJ),

2002 WL 32191640, at *10 (S.D.N.Y. Dec. 20, 2002) (approvingly quoting *Standard*

*Alliance*'s description of the policy reasons for Section 2-607(3)'s notice requirement), *aff'd*,

---

[4] The Court has found only six New York state-court cases citing *Panda Capital*.  *See SSG*
*Door & Hardware, Inc. v. APS Contracting, Inc.*, 87 N.Y.S.3d 651, 653 (2d Dep't 2018);
*Elmo Mfg. Corp. v. Am. Innovations, Inc.*, 843 N.Y.S.2d 428, 429 (2d Dep't 2007); *Cliffstar*
*Corp. v. Elmar Indus., Inc.*, 678 N.Y.S.2d 222, 223 (4th Dep't 1998); *Mid Island LP v. Hess*
*Corp.*, 983 N.Y.S.2d 204 (tbl.), 2013 WL 6421281, at *4 (Sup. Ct. 2013); *Marjam Supply Co.*
*v. All Craft Fabricators, Inc.*, 958 N.Y.S.2d 61 (tbl.), 2010 WL 3620255, at *6 (Sup. Ct.
2010); *CLC/CFI Liquidating Tr. v. Bloomingdales, Inc.*, 851 N.Y.S.2d 68 (tbl.), 2007
WL 3101249, at *4 (Sup. Ct. 2007).  Of those six, just two – *Mid Island* and *Marjam Supply*,
both trial-court decisions – cite *Panda Capital* for the proposition that the filing of a lawsuit,
by itself, satisfies Section 2-607(3)'s notice requirement, and *Mid Island* did so in dicta.
Further, *Mid Island* elsewhere "makes clear that 'timely notice is a condition *precedent* to
bringing an action for breach of warranty.'"  *Lugones*, 440 F. Supp. 3d at 244-45 (quoting *Mid*
*Island*, 2013 WL 6421281, at *4).

348 F.3d 352 (2d Cir. 2003) (per curiam).  Filing a lawsuit without providing any means of prior notice thwarts, rather than fulfills, these objectives.

For these reasons, the Court follows the more persuasive and voluminous body of case law rejecting *Tomasino*'s notice-by-complaint theory for Section 2-607(3).  *See Wheeler*, 652 F. Supp. 3d at 433 ("the clear majority of courts in this District have rejected arguments that *Panda Capital* permits a plaintiff to satisfy the notice requirements by filing a complaint"; collecting cases).

Finally, Plaintiff asserts that "'notice requirements for breaches of warranty have long been jettisoned in New York' for retail sales."  Opp. at 9 (quoting *Gavilanes v. Gerber Prods. Co.*, No. 20-cv-05558, 2021 WL 5052896 (FB), at *7 (E.D.N.Y. Nov. 1, 2021)).  But *Gavilanes* "has been repeatedly criticized by courts in this district as misapplying New York law" and "reflects a disfavored minority view."  *Fuller v. Stop & Shop Supermarket Co.*, No. 22-cv-09824 (CS), 2023 WL 8005319, at *8 (S.D.N.Y. Nov. 17, 2023).  To the extent that decisions such as *Gavilanes* "create an exception to the notice requirement for breach of warranty claims, their reasoning relies on the physical harm suffered by plaintiffs that made their case more like a tort than a contract dispute."  *Brockington*, 2023 WL 6317992, at *14 (quoting *Wheeler*, 652 F. Supp. 3d at 434).  Therefore, those cases are not applicable where, as here, "Plaintiff claims purely economic injury."  *Id.*; *accord Hoffmann*, 646 F. Supp. 3d at 562 ("[T]his limited exception waives the pre-suit requirement in cases involving 'physical or personal injury as a result of Defendant's alleged breach,' neither of which is alleged in this case." (quoting *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 685 (S.D.N.Y. 2021))).

Accordingly, Plaintiff's express-warranty claim is dismissed.

## IV.   Implied Warranties of Merchantability and Fitness for a Particular Purpose

"Sections 2-314 and 2-315 [of the UCC] imply warranties of merchantability and fitness for a particular purpose, respectively." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 472 (S.D.N.Y. 2010) (citing N.Y. U.C.C. §§ 2-314 to -315).  Plaintiff asserts that Defendant breached both implied warranties.  Defendant moves to dismiss Plaintiff's implied-warranty claims.  The Court grants the motion to dismiss those claims.

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 789 (3d Dep't 1997)).  A merchant breaches the implied warranty of merchantability "if it sells goods that are not 'fit for the ordinary purposes for which such goods are used.'" *Id.* (quoting N.Y. U.C.C. § 2-314(2)(c)).  "This standard does not require that the goods be perfect . . . or that they 'fulfill a buyer's every expectation'; it requires only that the goods sold be of 'a minimal level of quality.'" *Id.* (brackets omitted) (quoting *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 n.4 (N.Y. 1995)).

Under the implied warranty of fitness for a particular purpose, a manufacturer "warrants that goods shall be fit for any particular purpose for which the goods are required outside [of] the goods' ordinary purpose." *Lin v. Can. Goose US, Inc.*, 640 F. Supp. 3d 349, 363 (S.D.N.Y. 2022) (quotation marks and citation omitted).  The plaintiff must establish that: (1) "the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required;" (2) "the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods;" and (3) "the buyer did in fact rely on that

skill." *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 112 (2d Cir. 2010) (summary order) (quoting *Saratoga Spa & Bath*, 656 N.Y.S.2d at 790).

Both types of implied-warranty claims require privity between the plaintiff and the defendant in cases that do not involve a personal injury. *See Aracena v. BMW of N. Am., LLC*, 71 N.Y.S.3d 614, 616 (2d Dep't 2018) ("No implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." (brackets and citation omitted)); *Miller v. Gen. Motors Corp.*, 471 N.Y.S.2d 280, 282 (1st Dep't 1984) ("Where, as here, the suit has been one to recover for economic loss, it has consistently been held that a cause of action does not lie against a remote manufacturer for the breach of an implied warranty."), *aff'd*, 479 N.E.2d 249 (N.Y. 1985).

On Plaintiff's own account, he purchased the space heater at a Home Depot store in the Bronx, rather than from Defendant directly.  Am. Compl. ¶ 48.  Thus, Plaintiff is not in privity with Defendant.  *See Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 459 (S.D.N.Y. 2022) ("[R]emote purchasers, like Plaintiff, definitionally are not in privity with the manufacturers of the products that they buy.").  Plaintiff does not allege personal injuries and, therefore, the Court dismisses Plaintiff's claims for breaches of the implied warranties of merchantability and fitness for a particular purpose.

## V.    The MMWA

The Court turns to Plaintiff's claim under the MMWA.  The MMWA "does not require that a warranty be provided, but mandates that, if one is given, it not be misleading." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990). Under the MMWA, "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty, [or an] implied warranty, . . . may

bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  "At its core, . . . the MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages."  *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (quotation marks and citation omitted).  When the underlying breach-of-warranty claim is dismissed, the MMWA claim will also be dismissed.  *See, e.g.*, *Carter v. Ralph Lauren Corp.*, --- F. Supp. 3d ----, 2023 WL 4684559, at *15 (S.D.N.Y. July 20, 2023); *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 81 (S.D.N.Y. 2021).

Because the Court is dismissing Plaintiff's express-warranty and implied-warranty claims, Plaintiff's MMWA claim "must also be dismissed."  *Hoffman*, 646 F. Supp. 3d at 562.

## VI.    Fraud

Plaintiff also alleges that Defendant committed fraud.  "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015); *accord Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1182 (N.Y. 2018).  Rule 9(b) requires a plaintiff claiming fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).  To do so, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *MacNaughton*, 67 F.4th at 99 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see Chechele v. Laubies*, 527 F. Supp. 3d 526, 536 (S.D.N.Y. 2021) ("Rule 9(b) requires that

claims sounding in fraud recite the who, what, when, where, and how." (quotation marks and citation omitted)).

Plaintiff fails to adequately plead a fraud claim because, at the very least, he has inadequately pleaded the element of fraudulent intent, also known as "scienter." *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999). When Defendant made this point in its initial brief, *see* Br. at 8, Plaintiff responded that Rule 9(b) "permits scienter to be alleged generally," Opp. at 11 (quotation marks and citation omitted). "While Plaintiff is correct that a fraud claim can plead scienter 'generally,' courts have been clear that 'the plaintiff must still allege facts that give rise to a strong inference of fraudulent intent.'" *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 309 (S.D.N.Y. 2023) (emphasis omitted) (quoting *Colpitts*, 527 F. Supp. 3d at 585).

Plaintiff does not clear this hurdle. Plaintiff's sole factual allegation related to fraudulent intent is that "Defendant had knowledge of these issues [with its space heater] for several years, due to issues with the circuit boards in its automatic temperature control units, based on use of lower quality and lower cost parts and defective circuit board design." Am. Compl. ¶ 91. "'But the simple knowledge that a statement is false' is insufficient to plead a strong inference of fraudulent intent." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 281 (S.D.N.Y. 2021) (quoting *Cooper*, 553 F. Supp. 3d at 115); *accord Brockington*, 2023 WL 6317992, at *16 (collecting cases); *Wargo*, 599 F. Supp. 3d at 178; *Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20-cv-08496 (ER), 2022 WL 657044, at *10 (S.D.N.Y. Mar. 4, 2022). Rather, to plead a strong inference of fraudulent intent, a plaintiff must either "alleg[e] facts to show that defendants had both motive and opportunity to commit fraud," or "alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

*Hawkins*, 654 F. Supp. 3d at 309 (quoting *Colpitts*, 527 F. Supp. 3d at 585).  Plaintiff does neither here.  The Court therefore dismisses Plaintiff's fraud claim.

## VII.    Unjust Enrichment

Plaintiff's unjust-enrichment claim is, in its entirety: "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits."  Am. Compl. ¶ 92.  The Court dismisses this claim as duplicative of Plaintiff's other causes of action.

"To recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022) (brackets, quotation marks, and citation omitted).  Because an unjust-enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim," *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012), courts may dismiss duplicative unjust-enrichment claims at the pleading stage, *see, e.g.*, *Yookel, Inc. v. U.S. Steel Corp.*, No. 22-655, 2023 WL 3033512, at *2 (2d Cir. Apr. 21, 2023) (summary order); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 305 (S.D.N.Y. 2022) (collecting cases).

Here, Plaintiff "makes no factual allegations unique to the unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from his other claims."  *Fuller*, 2023 WL 8005319, at *9 (brackets, ellipsis, and citation omitted).  Those deficiencies are fatal to his unjust-enrichment claim.  Focusing on claims that the Court is not dismissing here, "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims."  *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249

(S.D.N.Y. 2021).  It is true, as Plaintiff notes in his brief (Opp. at 11), that he may "set out 2 or more statements of a claim or defense alternatively or hypothetically."  Fed. R. Civ. P. 8(d)(2); *see Cunningham v. Cornell Univ.*, 86 F.4th 961, 979 (2d Cir. 2023) ("Under the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." (quotation marks and citation omitted)).  But "it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Reyes v. Upfield US Inc.*, --- F. Supp. 3d ----, 2023 WL 6276685, at *13 (S.D.N.Y. Sept. 26, 2023) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).  Plaintiff offers no such explanation here.  Thus, his unjust-enrichment claim is dismissed.

## VIII.   Leave to Amend

In the last sentence of his opposition brief, Plaintiff states without further elaboration that if the Court grants Defendant's motion to dismiss, it should "grant leave to file a Second Amended Complaint."  Opp. at 11.  The Court denies this request.

"Once a responsive pleading has been filed, [a] plaintiff may amend the complaint only with leave of court." *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (citation omitted).  A court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2)'s "permissive standard is consistent with [the] 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  Nonetheless, "it is within the sound discretion of the district court" to deny leave to amend "for good reason, including futility, bad faith, undue delay, or

undue prejudice to the opposing party." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 844 F.3d 98, 105 (2d Cir. 2018)).

"Generally, a 'plaintiff need not be given leave to amend if he fails to specify . . . how amendment would cure the pleading deficiencies in his complaint.'" *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022) (brackets omitted) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). "Here, [Plaintiff] has failed to articulate . . . any additional allegations that he could assert in a second amended complaint that could save his [dismissed claims]." *Id.* Indeed, the Court notes that Plaintiff has already amended his complaint once, in response to Defendant's motion to dismiss Plaintiff's initial complaint – a motion to dismiss that raised many of the same deficiencies found in the Amended Complaint, and which Plaintiff failed to address. *See, e.g.*, ECF No. 13 at 19 ("Plaintiff has failed to properly allege any facts giving rise to an inference of fraudulent intent, much less facts sufficient to meet the high standard of Rule 9(b)."); *id.* at 20 ("Plaintiff has failed to provide Defendant with the required pre-suit notice, or even allege an attempt at doing so, and, as such, his warranty claims under New York law should be dismissed."). "Because Plaintiff's amended complaint did not remedy the defects in the original complaint, the Court declines to grant Plaintiff another opportunity to amend." *Lopez v. U.S. Dep't of the Interior*, No. 22-cv-04744 (LTS), 2023 WL 2775682, at *4 (S.D.N.Y. Apr. 3, 2023); *accord Baines v. Nature's Bounty (NY), Inc.*, No. 23-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (summary order) (district court acted within its discretion in denying plaintiffs' leave to amend where (1) "Plaintiffs already amended their complaint once in the face of a pre-motion letter from Defendants" raising the same deficiencies that provided the basis for the district court's dismissal, and (2) "[i]n opposing Defendants' motion to dismiss, Plaintiffs then requested leave to amend again in a single, boilerplate sentence without specifying what

allegations they could add or how amendment would cure any deficiencies"). Thus, the Court denies Plaintiff's request for leave to file a second amended complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is DENIED as to Plaintiff's GBL claims and Plaintiff's claims under the consumer-fraud statutes of the additional states. Defendant's motion to dismiss is GRANTED as to Plaintiff's other claims. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 16. The discovery stay (ECF No. 8) is hereby lifted and the parties shall submit a revised draft proposed Case Management Plan within 10 days of this Order.

Dated: December 14, 2023
       New York, New York

SO ORDERED.

_Jennifer Rochon_

JENNIFER L. ROCHON
United States District Judge