UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN VELEZ, individually and on behalf of all others similarly situated,

       Plaintiff,

-against-

LASKO PRODUCTS, LLC,

       Defendant.

---

Case No. 1:22-cv-08581 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

  In October 2021, Juan Velez ("Plaintiff") purchased a low-profile portable baseboard space heater produced by Lasko Products, LLC ("Lasko" or "Defendant"). Plaintiff brings this putative class action against Defendant based on alleged defects with that space heater, asserting that Defendant (1) violated the New York General Business Law (GBL), N.Y. Gen. Bus. Law §§ 349-350, (2) violated nine other states' consumer-fraud statutes, (3) breached an express warranty, (4) breached the implied warranties of merchantability and fitness for a particular purpose, (5) breached the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, (6) committed common law fraud, and (7) was unjustly enriched. Dkt. 14 (Amended Complaint or "AC") ¶¶ 68-92. The Court previously dismissed all but the GBL and other state consumer-fraud claims for failure to state a claim. *See Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 464 (S.D.N.Y. 2023) (*Velez I*). Defendant now moves for summary judgment on Plaintiff's remaining claims, or, in the alternative, to exclude the opinions of Plaintiff's proffered experts. Dkt. 52. For the reasons that follow, Defendant's motion for summary judgment is GRANTED and its *Daubert* motion is DENIED as moot.

BACKGROUND

The following facts are undisputed and drawn from the parties' Rule 56.1 Joint Statement of Undisputed Facts, *see* Dkt. 57 ("JSUF"), Defendant's Rule 56.1 Statement, *see* Dkt. 56, the Harrington and Peterson Declarations, *see* Dkt. 53 ("Harrington Decl."); Dkt. 54 ("Peterson Decl."), and the exhibits attached thereto, *see* Dkt. 53-1; Dkts. 54-1 to 54-7.[1]

I. **Factual Background**

Defendant, a manufacturer, marketer, and seller of low-profile portable space heaters, manufactures a low-profile portable baseboard heater (the "Product") in two product models, Product Model 5622 and Product Model 5624, which are identical except in color. Df. SUF ¶ 12; JSUF ¶¶ 1-2. "The Product uses natural convection to circulate warm air throughout a room." JSUF ¶ 3. It is meant to be used as a supplemental heat source. Df. SUF ¶ 6. The Product has a digital temperature display with a programmable thermostat; the display shows the temperature to which the heater is set and has buttons that let the user set the thermostat from 39 to 90 degrees Fahrenheit and set the auto-off timer from 1 to 8 hours. JSUF ¶¶ 4-5. The Product has two operational modes: (1) "a continuous heat mode in which the unit runs until the user turns the unit off," and (2) "an automatic temperature control mode, which turns the unit on when the detected temperature falls 1 degree Fahrenheit below the set temperature, and turns [it] off when the detected temperature rises 2 degrees Fahrenheit above the set temperature." JSUF ¶ 6. "The Product is covered by [Defendant]'s limited warranty, which guarantees the Product for three years against defects in materials and workmanship." JSUF

---

[1] Despite submitting a brief in opposition, *see generally* Dkt. 58 ("Opp."), Plaintiff did not submit a counterstatement of material facts or respond to Defendant's statement of material facts. "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).

¶ 7. The limited warranty "extends only to the original purchaser and provides that [Defendant] will, at its discretion, repair or replace any defective parts, or replace the entire unit should it prove to be defective." JSUF ¶ 8.

On October 21, 2021, Plaintiff ordered the Product online from Home Depot and picked it up from a Home Depot location in the Bronx, New York. JSUF ¶ 9. Plaintiff did not view or rely on any advertising in deciding to purchase the product but instead made the decision to purchase the Product based on his familiarity with the Lasko brand and his previous use of Lasko fans. Df. SUF ¶¶ 2, 4. Plaintiff did not research what space heater to purchase before buying the Product, since he had previously used Lasko products. JSUF ¶ 10. He also did not rely on any statements on the Product's packaging in making his decision to purchase the Product. Df. SUF ¶ 3. He did not consider any alternatives when purchasing the Product, since he meant to use the Product only temporarily, pending installation of split units. JSUF ¶ 11. When Plaintiff bought the Product, he was doing construction at his house and did not have a boiler at the time. JSUF ¶ 12.

Plaintiff used the Product one time in his sons' room, which is located in a basement apartment. JSUF ¶ 13. The room was approximately 80 to 100 square feet, and Plaintiff placed the Product in the center of the room between his sons' two beds. JSUF ¶ 16. There was no other source of heat in the room. Df. SUF ¶ 6. Plaintiff believes he set the Product either in the "high 70s, low 70s" or the "high 60s or low 70s." JSUF ¶ 14 (quoting Dkt. 54-6 ("Pl. Dep. Tr.") 65:21-66:6, 76:21-77:10). Plaintiff did not use the Product's automatic timer function, and instead set the temperature on the Product by pressing the "up" button on the digital display until he reached the desired temperature. JSUF ¶¶ 15-17. Plaintiff believes he set the Product for continuous heat, but wanted the Product to shut off once the room reached the desired set temperature. Df. SUF ¶ 5. Plaintiff states that "the Product never shut off the

3

night that he used it in his sons' room," and thus the following morning it was "extremely hot" in the room. JSUF ¶ 18. However, Plaintiff did not observe whether the Product turned off and turned back on, since he did not check the Product while using it overnight. Df. SUF ¶ 7. He was also "unsure of the temperature in his sons' room the following morning," since "he did not use any tool to measure it." Df. SUF ¶ 8.

Plaintiff subsequently used the Product several more times, but did not try to use the Product's automatic temperature function. Df. SUF ¶ 9. He never experienced the Product shutting off prior to reaching its set temperature, JSUF ¶ 22, and did not experience any other incident where the Product heated up beyond the temperature to which it was set on the digital display, Df. SUF ¶ 11.

The Amended Complaint alleges that Plaintiff was "stymied" by the Defendant's warranty process, was "placed on hold for upwards of half an hour," and was thereafter "disconnected from phone calls" with customer service. AC ¶¶ 57-58. However, the evidence developed during discovery squarely contradicts these allegations. After using the Product in his sons' room, Plaintiff never considered making a claim under the Product's limited warranty, nor did he review the warranty information for the Product. JSUF ¶ 19; Df. SUF ¶ 10. He admits that he "never tried to contact Lasko customer service and never experienced issues with long hold times or getting disconnected from customer service." JSUF ¶ 20.

## II. Procedural History

Plaintiff filed suit on October 7, 2022. Dkt. 1. Defendant moved to dismiss the Complaint on February 13, 2023. Dkt. 12. On February 27, 2023, Plaintiff filed the Amended Complaint. *See generally* AC. Defendant moved to dismiss the AC on March 13, 2023, Dkt. 16, and the Court granted the motion in part, dismissing all of Plaintiff's claims

except his GBL claims and claims under nine other states' consumer fraud statutes, *Velez I*, 706 F. Supp. 3d at 451, 464.  Following discovery, Defendant filed the instant motion for summary judgment or, in the alternative, to exclude Plaintiff's proposed experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Dkt. 52; Dkt. 55 ("Br.").  The motion is fully briefed.  *See* Dkt. 58 ("Opp."); Dkt. 59 ("Reply"); Dkt. 60 (Defendant's notice of supplemental authority).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, a moving party is entitled to summary judgment if, on any claim or defense, the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law.'  A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (citation omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Id.* (citation omitted) (internal quotation marks omitted).  To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S.

at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's remaining claims under GBL sections 349 (prohibiting deceptive acts or practices) and 350 (prohibiting false advertising), and his claims on behalf of a putative multistate class under the consumer-fraud statutes of Alabama, Idaho, Montana, Alaska, West Virginia, Georgia, South Carolina, Tennessee, and Utah. *See* Br. at 1, 17; AC ¶¶ 68-73. Because Plaintiff has withdrawn his claims on behalf of the multistate class and represents that he will proceed only with his GBL claims, *see* Opp. at 1 n.1, the Court dismisses Plaintiff's multistate consumer-protection claims. The Court will analyze Plaintiff's GBL claims together, since the "standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Velez I*, 706 F. Supp. 3d at 452 (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239 (S.D.N.Y. 2020)).

Plaintiff alleges that Defendant represented that the Product's automatic temperature feature "controls room temperature" and "control[s] the warm air to [the user's] comfort level," AC ¶ 1, but that contrary to these representations and advertisements, the Product overheats and exceeds the temperature set by the user, and/or shuts off without warning after a few minutes of use, *id.* ¶¶ 3, 5, 19-22, 51-53. Plaintiff pleads that he was injured under a price-premium theory, namely that he paid a higher price for the Product than the price for which it would otherwise be sold absent the misleading representations and omissions. *Id.* ¶¶ 36, 51, 53, 59, 60. Defendant moves for summary judgment, arguing that Plaintiff has not provided any evidence that (1) the Product suffers from the defect Plaintiff alleged, (2) Defendant's statements about the Product were misleading, or (3) Plaintiff was injured.

6

Br. at 2.  The Court need reach only Defendant's last argument, that is, that there is no evidence of injury.

To recover under GBL sections 349 and 350, "a plaintiff must prove 'actual' injury . . . , though not necessarily pecuniary harm." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000).  "A plaintiff suffers actual injury if, 'on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Colpitts v. Blue Diamond Growers*, No. 20-cv-02487 (JPC), 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023) (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020)). Plaintiffs may demonstrate that they did not receive the full value of their purchase by showing that (1) they "paid a higher price for a product than [they] otherwise would have paid because defendant's deceptive conduct artificially inflated the market price — *i.e.*, that [they] paid a 'price premium'" and/or that (2) they were "exposed to a material deceptive act and relied on that misrepresented fact to [their] detriment." *Kelly v. Beliv LLC*, No. 21-cv-08134 (LJL), 2024 WL 1076217, at *9 (S.D.N.Y. Mar. 12, 2024) (collecting cases).

Since the outset of this action, Plaintiff has advanced a price-premium theory of injury. *See* JSUF ¶ 56; Opp. at 8-12; *Velez I*, 706 F. Supp. 3d at 454.  However, he has not identified any evidence that the Product commanded a price premium.  The only evidence Plaintiff points to, albeit in his opposition brief rather than in disputing the Defendant's Rule 56.1 Statement, is the evidence of his proposed expert, Dr. Ingersoll.  *See* Opp. at 9-12; Dkt. 54-1 ("Ingersoll Rep.").  Dr. Ingersoll's expert report outlines the expert methodology he "*would use* if requested to conduct a price premium analysis on the value customers would place on the Product" if it did not suffer from the defects Plaintiff alleges.  Ingersoll Rep. ¶ 9 (emphasis added).  Dr. Ingersoll proposes using a conjoint analysis survey to measure a price premium. *Id.* ¶¶ 21-31.  However, Dr. Ingersoll's report did not actually conduct such an analysis.  *See*

7

*generally* Ingersoll Rep. While Plaintiff asserts that conjoint analyses and regression models are appropriate tools to determine price premiums, Opp. at 10-11, he does not address the fact that Ingersoll did not perform this analysis and instead argues that Ingersoll "*will* rely on proposed studies of consumer deception and materiality" to eventually "calculate a price premium." *Id.* at 11 (emphasis added). In a series of cases brought by the same Plaintiff's counsel present here, courts in this District have consistently rejected the argument that a hypothetical price-premium analysis is sufficient to support the existence of a price premium at summary judgment. *See, e.g.*, *Kelly*, 2024 WL 1076217, at *10; *Reyes v. Upfield US Inc.*, No. 22-cv-06722 (KMK), 2025 WL 786656, at *7 (S.D.N.Y. Mar. 12, 2025); *Clemmons v. Flora Food US Inc.*, No. 22-cv-00355 (PKC), 2025 WL 949548, at *6-7 (S.D.N.Y. Mar. 28, 2025).

*Kelly v. Beliv LLC*, 2024 WL 1076217, which Defendant cites, is instructive. In that case, the plaintiff relied on an expert report that similarly proposed using "conjoint and hedonic analyses" to measure the price premium for the product at issue, but "ha[d] not conducted either analysis to date." *Id.* at *10. The court concluded that this report could not support the allegation that the plaintiff had been injured, since "a proposal to identify evidence at some yet-to-be-determined date is not sufficient to survive summary judgment when [p]laintiff is required to come forward with admissible evidence to raise a genuine issue of fact for trial." *Id.* So too here, Dr. Ingersoll has not conducted the conjoint analysis he proposes and instead only explains how he *could* identify evidence in support of Plaintiff's theory of injury. *See generally* Ingersoll Rep. Plaintiff identifies no other evidence of a price premium, *see* Opp. at 9-12, and thus no reasonable factfinder could conclude that Plaintiff has established he was injured by paying a price premium for the Product.

8

In an attempt to distinguish *Kelly*, Plaintiff advances an alternate theory of injury for the first time in his opposition brief, contending that he relied to his detriment on Defendant's promises and did not receive the benefit of his bargain. Opp. at 8-9 (citing *Kelly*, 2024 WL 1076217, at *11). The undisputed facts do not demonstrate that Plaintiff "was exposed to a material deceptive act and relied on that misrepresented fact to [his] detriment." *Kelly*, 2024 WL 1076217, at *9. Far from relying to his detriment, Plaintiff testified that he did not view or rely on *any* of Defendant's statements — either on the packaging or in advertising — in making his purchase, *see* Df. SUF ¶¶ 2-4. Instead, he purchased the Product because of his general familiarity with the Lasko brand. *Id.* ¶ 4. Because the evidence in the record indicates Plaintiff bought the Product without seeing or relying on any of Defendant's purportedly misleading statements, Plaintiff fails to present a triable issue of fact that he relied to his detriment on the allegedly materially misleading claims on the Product's packaging or in its advertising when he purchased the Product.[2]

---

[2] Defendant alternatively argues that Plaintiff cannot show injury because he could have taken advantage of a repair-and-replace warranty but did not do so. *See, e.g.*, *Tarsio v. FCA US LLC*, No. 22-cv-09993 (NSR), 2024 WL 1514211, at *4 (S.D.N.Y. Apr. 8, 2024) (dismissing GBL claim for lack of injury where defendant provided adequate remedy for the problem through recall and repair policy); *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (dismissing GBL sections 349 and 359 claims for lack of injury because the adequate warranty remedy available to the plaintiff defeated his price-premium theory of injury); *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 678 (S.D.N.Y. 2012) (similar). The Court initially denied Defendant's motion to dismiss on this ground because Plaintiff alleged that he was prevented from taking advantage of the warranty because he could not reach customer service, since he was placed on hold for lengthy periods and was ultimately disconnected. *Velez I*, 706 F. Supp. 3d at 455-56. Given the Court's findings that Plaintiff has not established injury here, the Court need not reach this alternative argument. But the record now shows that these allegations were demonstrably false — Plaintiff testified in his deposition that he never tried to contact Lasko customer service, never experienced issues with long hold times or getting disconnected from customer service, and in fact never even considered making a claim under the warranty. JSUF ¶¶ 19-20. No explanation for this discrepancy was provided by Plaintiff's counsel and counsel is warned that further misrepresentations will not be tolerated.

9

Finally, Plaintiff tries to avoid the absence of any evidence of injury by asserting that he can rely on statutory damages to establish injury. *See* Opp. at 9. But the New York Court of Appeals has "explicitly and unambiguously stated that 'a plaintiff must prove "actual" injury to recover under the statute.'" *Colpitts*, 2023 WL 2752161, at *3 (quoting *Stutman*, 731 N.E.2d at 611). Numerous courts in this Circuit have rejected Plaintiff's argument in other cases, made by the counsel representing Plaintiff here, reasoning that "[a]lthough GBL §§ 349 and 350 authorize statutory damages, only those who actually suffer injury are entitled to recover said damages. Accordingly, *regardless of the availability of statutory damages at the remedies stage*, Plaintiff must still prove that she suffered *actual injury* as a result of Defendant's allegedly false advertising." *Reyes*, 2025 WL 786656, at *8 (first emphasis added) (citations omitted); *see also Kelly*, 2024 WL 1076217, at *11 n.11 (rejecting argument that statutory damages can support the existence of injury and explaining that "the question of remedies is distinct from the question of liability, [as] Sections 349 and 350 both require that a plaintiff establish that he suffered an injury before he can obtain damages, statutory or actual" (internal quotation marks and citation omitted)); *Clemmons*, 2025 WL 949548, at *7 (same). Thus, "despite the availability of statutory damages, Plaintiff must still prove that he suffered an actual injury as a result of Defendant's allegedly deceptive practices." *Colpitts*, 2023 WL 2752161, at *3. He has not done so.

For the reasons set forth in *Reyes*, the cases cited by Plaintiff in arguing otherwise are inapposite. The Court joins the *Reyes* court in admonishing that the Court's conclusion here "should come as no surprise to Plaintiff's counsel, who has unsuccessfully made this precise argument to courts in this District at least [thrice], citing the same inapposite cases when doing so." 2025 WL 786656, at *8 n.12 (citation omitted).

For all of these reasons, no reasonable trier of fact could conclude on this summary judgment record that Plaintiff suffered an actual injury, an element he must prove to succeed on either of his GBL claims. The Court therefore need not reach the alternative arguments that Plaintiff has not provided evidence that the Product is defective (or the related *Daubert* motion seeking to exclude the testimony of proposed expert Boyell regarding defects in the Product), or that the challenged statements are misleading (or the related *Daubert* motion seeking to exclude the testimony of proposed expert Dr. Matthews regarding customer confusion). Defendant is thus entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. Defendant's *Daubert* motion is denied as moot. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 52 and close the case.

Dated: July 7, 2025
      New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge